UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-00642-KK-DTBx** | Date: | February 13, 2026 |
|---|---|---|---|
| Title: | ***Vishal None v. Desert View Facility et al.*** | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):            Attorney(s) Present for Defendant(s):

None Present                                                None Present

**Proceedings:**   **(In Chambers) Order GRANTING Petitioner's Motion for Temporary Restraining Order [Dkt. 3]**

## I.
## INTRODUCTION

On February 12, 2026, petitioner Vishal None ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Warden of the Desert View Facility, Todd Lyons, Kristi Noem, and Pamela Bondi ("Respondents").  ECF Docket No. ("Dkt.") 1, Petition ("Pet.").  On the same day, Petitioner filed a Motion for a Temporary Restraining Order ("Motion") seeking his immediate release, or in the alternative, an individualized bond hearing within a fixed time period. Dkt. 3, Motion ("Mot.") at 9-10.

On February 12, 2026, this Court ordered Respondents to file a Response to Petitioner's Motion no later than February 13, 2026, at 12:00 p.m.  Dkt. 5.  As of the date of this Order, Respondents have not filed a response.

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Petitioner's Motion is **GRANTED**.

///

///

## II.
## BACKGROUND

Petitioner is a native of India who entered the United States on May 9, 2024. Pet. ¶ 1. Petitioner was briefly detained on his date of arrival. Id. The Department of Homeland Security ("DHS") also served Petitioner a Notice to Appear ("NTA"), charging him with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. Id. ¶ 19. Petitioner was subsequently released on an Order of Release on Recognizance ("ROR"), subject to supervision through Alternatives to Detention ("ATD") monitoring. Id. ¶¶ 1-2.

Petitioner complied with all conditions of his release and supervision and has never been found to be a flight risk or danger to the community. Id. ¶ 2. Prior to re-detention, Petitioner "lived openly and lawfully under DHS supervision for more than a year, complied with every reporting obligation, maintained employment, and integrated into the community." See Mot. at 8.

On November 10, 2025, Petitioner was re-detained by ICE in the parking lot of his apartment building as he left for work. Pet. ¶ 3. Petitioner alleges no warrant or allegation of criminal activity was raised during the arrest. Id. Additionally, throughout his period of release after entry on May 9, 2024 through November 10, 2025, "Petitioner maintained perfect compliance with ATD monitoring and ICE supervision." Id. ¶ 20.

Petitioner remains in custody at the Desert View Facility. Pet. ¶ 11. Since Petitioner's re-detention, DHS has declined to provide Petitioner a bond hearing before an Immigration Judge ("IJ"). Mot. at 2-3.

On February 12, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1. **Ground One:** Violation of the Fifth Amendment Right to Substantive Due Process;
2. **Ground Two:** Violation of the Fifth Amendment Right to Procedural Due Process;
3. **Ground Four:** Violation of the Immigration & Nationality Act; and
4. **Ground Four:** Violation of the Fourth Amendment Protection Against Unlawful Warrantless Arrest and Detention.

Pet. ¶¶ 32-47.

On February 12, 2026, Petitioner filed the instant Motion requesting immediate release, or in the alternative, "an individualized bond hearing before an [IJ] within a fixed time period." Mot. at 9-10.

On February 13, 2026, Respondents failed to file a response. Dkt. 5.

This matter, thus, stands submitted.

///

///

## III.
## LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, [] known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met. Id. at 1132.

## IV.
## THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE TEMPORARY RESTRAINING ORDER

### A.   THE LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

#### 1.   Applicable Law

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782

F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (1990)).  To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976).  <u>Yagman v. Garcetti</u>, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting <u>Shinault</u>, 782 F.3d at 1057).  Under the <u>Mathews</u> test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements."  <u>Mathews</u>, 424 U.S. at 321.

    **2.**    **Analysis**

Here, Petitioner argues Respondents violated his due process rights by re-detaining him "untethered to any changed circumstances."  Mot. at 9.  The Court finds Petitioner is likely to succeed on or has at least raised serious questions regarding the merits of this procedural due process claim.

First, Petitioner has a substantial private interest in remaining out of immigration custody given his constitutional right to due process.  See <u>E.A. T.-B. v. Wamsley</u>, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) ("Petitioner's interest in not being detained is 'the most elemental of liberty interests.'" (citation modified) (quoting <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 529 (2004))).  As noted, following his initial detention in immigration custody, Petitioner was released on ROR in 2024.  Pet. ¶¶ 1-2.  Petitioner's release gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government."  <u>Hamdi</u>, 542 U.S. at 529; <u>see also</u> <u>Doe v. Becerra</u>, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.").  Moreover, the fact Petitioner was previously "held in custody by the government at an earlier time does not eliminate [his] liberty interest in remaining on release."  <u>Valencia Zapata v. Kaiser</u>, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) (citing <u>Morrissey</u>, 408 U.S. at 482)).

In short, Petitioner's ROR, Mot. at 3-4, contained an "implicit promise that [his release] will be revoked only if he fails to live up to the [ROR's] conditions."  <u>Morrissey</u>, 408 U.S. at 482; <u>see also</u> <u>Pinchi v. Noem</u>, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").  Between May 9, 2024 to November 10, 2025, Petitioner integrated into his community and gained employment.  <u>See</u> Mot. at 8; <u>see also</u> <u>Morrissey</u>, 408 U.S. at 482.  Additionally, the length of Petitioner's release and compliance with the ROR and ATD supervision for eighteen months further strengthen his private interest in remaining free from immigration detention.  Petitioner complied with all DHS conditions, "never missed a check-in, never violated ATD conditions, never absconded, and was never accused of noncompliance, danger, or flight risk."  Mot. at 2.  <u>See</u> <u>Doe</u>, 787 F. Supp. 3d at 1093 (finding the Government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); <u>Pinchi</u>, 792 F. Supp. 3d at 1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest).  Hence, Petitioner has established a strong interest in remaining free from immigration custody.

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). In releasing Petitioner on ROR in 2024, ICE necessarily determined Petitioner did not pose a significant flight risk or danger to the community. See 8 C.F.R. § 1236.1(c)(8) (authorizing release where the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"); see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (inferring from 8 C.F.R. § 1236.1(c)(8) that ICE determined a petitioner released on recognizance was neither "a danger to the community or a flight risk").

Respondents did not file a response to the Motion and thus fail to challenge any of Petitioner's contentions. Specifically, Respondents do not dispute Petitioner is not a flight risk, lacks a criminal history, and was apprehended unexplainedly while leaving for work. Mot. at 3; Pet. ¶¶ 3-4. Further, as noted, Petitioner has integrated himself into the community, maintained employment, and perfectly complied with his ATD monitoring and ICE supervision requirements. Mot. at 8-9; Pet. ¶ 20. The overwhelming evidence thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, No. CV 25-11206-MCS-PVCx, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025). Therefore, without the procedural safeguard of a pre-detention hearing, ICE may, as it appears to have done so here, revoke Petitioner's release and re-detain his "at any time," regardless of whether his detention serves any valid governmental purpose. Sun v. Santacruz, No. EDCV 25-02198-JLS-JCx, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (finding "post-detention safeguards are definitionally inappropriate to address the harm complained of here"); see also Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). Hence, Petitioner has shown there is a high risk he has been erroneously deprived of his liberty.

Third, Respondents have presented no countervailing interest in re-detaining Petitioner, and the burden of a pre-detention hearing is low. In fact, Respondents fail to provide any reason for Petitioner's ongoing re-detention. Thus, Respondents lack any governmental interest in continuing to detain Petitioner. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk)." Further, though Respondents would have expended resources in providing Petitioner notice and a hearing, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." E.A. T.-B., 795 F. Supp. 3d at 1324. This is especially so where, as here, Petitioner has complied with his terms of release, Pet. ¶¶ 20, 22, and Respondents do not challenge the Motion. Hence, Respondents' interest in Petitioner's continued detention is minimal if not entirely absent. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk).

In sum, Petitioner has raised a serious question as to whether he has been deprived of procedural due process. Accordingly, the first Winter factor weighs in favor of Petitioner.

**B.     THE LIKELIHOOD OF IRREPARABLE HARM**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation modified) (quoting Melendres, 695 F.3d at 1002). "Deprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Indeed, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." Cortez v. Sessions, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation modified).

Here, as stated above, Respondents have deprived Petitioner of due process by detaining him without notice or a pre-detention hearing. Mot. at 5-9; Pet. ¶¶ 16-24. Hence, there can be no doubt Petitioner is – and will continue to be – irreparably harmed absent relief from this Court. See, e.g., Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025) (finding irreparable harm where the petitioner would be "detained and [] not [] entitled to challenge his re-detention before a neutral adjudicator"); J.A.E.M. v. Wofford, No. 1:25-CV-01380-KES-HBK (HC), 2025 WL 3013377, at *8 (E.D. Cal. Oct. 27, 2025) (finding irreparable harm where the petitioner was "likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause").

Accordingly, the second Winter factor weighs in favor of Petitioner.

**C.     BALANCE OF EQUITIES AND PUBLIC INTEREST**

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (citation modified) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA).

Here, because Petitioner has demonstrated a likelihood of success on his procedural due process claim, the balance of equities and public interest "tip[] sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135. In addition, Respondents' interest in enforcing immigration laws is not persuasive because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-586 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'") (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016)).

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

///

///

\* \* \*

Thus, because all four Winter factors weigh in his favor, Petitioner is entitled to a temporary restraining order. See J.A.E.M., 2025 WL 3013377, at *8 ("Petitioner's immediate release is required to return him to the status quo ante—'the last uncontested status which preceded the pending controversy.'" (quoting Pinchi v. Noem, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at *3 (N.D. Cal. July 4, 2025))).

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Motion for Temporary Restraining Order is **GRANTED**;[1]
2. Respondents are **ORDERED** to immediately release Petitioner from their custody;
3. Respondents are **ENJOINED** from re-detaining Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required;
4. Respondents are **ORDERED** to file a status report no later than February 16, 2026, regarding their compliance with this Order; and
5. Respondents are **ORDERED TO SHOW CAUSE in writing no later than seven (7) days from the date of this order** why the Court should not issue a preliminary injunction. Petitioner may file a Reply **no later than ten (10) days from the date of this order**.

Failure to comply with this Order will result in sanctions.

**IT IS SO ORDERED**.

---

[1] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely Respondent will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996). Accordingly, the Court waives the bond requirement.